UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SUZANNE MCLEOD, as personal
representative of the ESTATE OF HANSELL
BRYAN MALONE, III,

                                        Case No. 3:09-cv-14246-WGY-HTS

          Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY,
*et al.*,

          Defendants.

_____/

**DEFENDANTS' SUPPLEMENTAL OBJECTIONS TO PLAINTIFF'S
DESIGNATIONS FROM THE DEPOSITION OF RICHARD JUPE
IN LIGHT OF THE COURT'S ORDER GRANTING
PARTIAL SUMMARY JUDGMENT TO PHILIP MORRIS USA INC.**

      Defendants hereby submit their supplemental objections to Plaintiff's designations from

the deposition testimony of Richard Jupe in light of the Court's order granting Philip Morris

USA Inc. ("PM USA") summary judgment on all claims except for Plaintiff's claim of

conspiracy to fraudulently conceal.  *See* 01/26/2015 Order (Doc. 76) (dismissing "[a]ll non-

conspiracy claims against PM").  In the prior waves of federal *Engle* progeny cases, no plaintiff

has proceeded to trial against a "conspiracy-only" defendant.  Therefore, the impact of such a

summary judgment order on the admissibility of the evidence is a new issue in this litigation as

to which there are no all-cases or prior rulings.[1]

      In the Joint Pretrial Statement (Doc. 31), the parties adopted their prior designations and

objections as to certain witnesses, including Mr. Jupe.  As to Mr. Jupe, PM USA preserved and

---

[1]  Defense counsel solicited opposing counsel's position regarding this matter on January 23, 2015, and to date plaintiff's counsel has not responded.

maintained all of its objections, and further agreed (for purposes of the Wave 7 cases only) that "[i]f the Court rules that it will adhere to the rulings made in prior cases in the federal *Engle* progeny litigation, then the parties agree that the pages and lines to be read would be the testimony played in *Reider*, as set forth in Ex. P.1 [to Doc. 158, the Joint Pretrial statement in *Chamberlain*, No. 3:09-cv-10809] (with the addition of lines 482:7-19)." *See* Doc. 158-16 in *Chamberlain*, No. 3:09-cv-10809, at p. 158.

However, in those prior cases, PM USA was a defendant as to all claims.  Now that all claims except conspiracy have been dismissed as to PM USA, the scope of the evidence that is potentially admissible as to PM USA is narrower than in prior cases.  Because all non-conspiracy claims against PM USA have been dismissed, any evidence of PM USA's conduct *not* specifically tied to Plaintiff's conspiracy claim would be irrelevant under Federal Rule of Civil Procedure 402.  Furthermore, even if such evidence had some marginal relevance (and it does not), the admission of such evidence would lead to both juror confusion and undue prejudice. Fed. R. Evid. 403.  Moreover, with respect to Plaintiff's claim for punitive damages, under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), admission of evidence regarding PM USA's conduct with no connection to Plaintiff's only claim against PM USA would violate PM USA's due process rights, because punitive damages can only be imposed for the conduct that gave rise to compensatory liability (here, the only such conduct would be conduct in furtherance of a conspiracy), and a defendant cannot be punished for harm to non-parties or conduct that did not cause the alleged smoking-related injury.  In the circumstances of this case, the virtually all of the testimony Plaintiff proposes to play from Mr. Jupe (attached as Ex. 1) is both irrelevant and unfairly prejudicial, and the Court should exclude it.

I.      **The Court Should Preclude Plaintiff From Playing Portions Of The Jupe Deposition Related To Cigarette Design**

To the extent the testimony Plaintiff seeks to play relates to cigarette design, it is irrelevant because there is no design claim against PM USA in this case.  Plaintiff's strict liability claim was dismissed on summary judgment.  01/26/2015 Order (Doc. 76).  Nor did the conspiracy claim in *Engle* have anything to do with design; it claimed "that the defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both."  *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1257 n.4 (Fla. 2006).  Therefore, testimony on cigarette design would have no relevance.  But, its admission would pose an undue risk of juror confusion and undue prejudice, as it may give the jury the mistaken belief that the design claim is at issue as to PM USA, or lead it erroneously to award damages based on conduct that is not at issue.

Accordingly, the Court should sustain Defendants' objections the following portions of Plaintiff's designations which pertain to issues of cigarette design: Jupe Dep. at 11:4-12:11, 12:13-21, 12:23-13:15, 15:18-17:9, 58:1-58:5, 58:22-24, 59:1-13, 59:15-16, 59:19-25, 60:2-7, 60:9-61:7, 62:3-12, 62:15-20, 62:22-63:2, 63:4-15, 63:17-63:24, 131:25-133:1, 133:3-24, 134:24-135:11, 135:13-22, 145:22-146:2, 146:4-13, 146:15-21, 149:8-11, 149:13-15, 209:18-210:24, 211:1-19, 211:21-212:6, 212:8-14, 212:16-24, 213:1-214:14, 215:6-216:1, 293:3-6, 293:8-16, 299:3-7, 299:9-16, 299:18-300:15, 330:17-301:11, 301:13-14, 301:17-302:2, 302:9-22, 302:24-25, 303:3-304:1, 468:13-469:8, 469:10-469:19, 479:19-480:19, 481:10-482:6, 483:9-485:8.

**II.    The Court Should Preclude Plaintiff From Playing Portions Of The Jupe Deposition Related To Whether Mr. Jupe Currently Agrees With Various Statements In Government Reports**

In addition, much of the deposition consists of questioning about whether Mr. Jupe

*currently* agrees, verbatim, with various statements in recent Surgeon General's reports – for the

most part in the field of addiction, in which he is not an expert.  For example, Plaintiff has

designated testimony about whether Mr. Jupe currently agrees with various statements about

nicotine addiction, such as certain statements in the 2010 Surgeon General's Report:

> Q.    Well, I just looked at the 2010 Surgeon General Report.  It didn't say that – that you had some brands of cigarettes that were supposedly safer than others, did – does it?
>
> A.    The Surgeon General Report, you're right, does not state differences amongst cigarettes.  You were asking me my opinion in the prior question.
>
> *          *          *
>
> Q.    So let me ask you if you agree or disagree with what the Surgeon General says on Page 105 about nicotine addiction. . . .
>
> *          *          *
>
> Q.    So does – is that – is that something Philip Morris agrees with or – or – Philip Morris fighting that?
>
> *          *          *
>
> A.    Again, I'm certainly not somebody who's studied addiction.  I'm going to make that point very clear.  I know we've said that earlier today.  And, certainly, we do agree that some people are addicted to smoking, okay?
>
> So is the fundamental reason?  I guess we would probably disagree with that.
>
> Q.    You disagree?  Did you say disagree with a D?
>
> A.    I said disagree.
>
> Q.    So Philip Morris now disagrees with the 2010 Surgeon General of the United States on – on nicotine addiction?

                                    *         *         *

    A.      Clearly, I said I disagree.

Dep. of Richard Jupe at 70, 85, 87-88 (Ex. 2).

      Such questioning has no relevance to the issue to be decided by the jury on the sole

remaining claim against PM USA – whether the smoker at issue relied to his determent on *past*

statements made in furtherance of a conspiracy to conceal the health risks or addictive nature of

smoking.  Indeed, Plaintiff's experts admit the conspiracy alleged in Engle is long over.  *See,*

*e.g.*, Dep. of K. Michael Cummings, Ph.D., at 200, *Huish v. R.J. Reynolds Tobacco Co.* ("Q.  So

the 50 year cover-up that you testified about ended in 1998 then?  A.  Pretty much, yeah, when

they got rid of the TI and TIRC.") (Ex. 3); Trial Tr. at 4434, *Piendle v. R.J. Reynolds Tobacco*

*Co.* (Dr. Cummings testifying, "That agreement started in the early 1950s and continued

throughout the term of The Tobacco Institute, which ended in 1998.") (Ex. 4); Dep. of K.

Michael Cummings at 311, *Simon v. R.J. Reynolds Tobacco Co.* ("Q. You believe that the

Defendants agreed to conceal information about health risks of smoking starting in December of

1953, correct?  A. Yes, they – they got together – the Defendants got together to jointly finance a

program to do that, yes . . . . Q.  And in what year do you believe that agreement ended?  A. The

-- 1998.") (Ex. 5); Trial Tr. at 1538, *Goveia v. R.J. Reynolds Tobacco Co.* (Dr. Burns testifying

that the tobacco industry "continued to insist that the evidence [linking smoking to disease]

wasn't sufficient all the way up to 1999.") (Ex. 6); Trial Tr. at 2302-03, *Hallgren v. R.J.*

*Reynolds Tobacco Co.* (Dr. Burns testifying that defendants "first admitted" the addictiveness of

nicotine in 1999) (Ex. 7).[2]  Nor could they claim otherwise; for well over a decade PM USA has

---

[2]    The Court also has ruled that Plaintiff's expert Dr. Proctor may not testify that Defendants
are engaged in an ongoing conspiracy.  *See* Jan. 26, 2015 Order (Doc. 74).

publicly agreed that smoking is addictive and causes disease, and it refers smokers and the public to the advice of public health agencies in these issues.[3]

Nor does Mr. Jupe's *current* disagreement with various propositions – in the context of a deposition – have any relevance to the issue of punitive damages.  The jury will only reach the issue of punitive damages as to PM USA if it finds for Plaintiff on her conspiracy claim against PM USA, and the only punitive damages question in Phase I would be whether PM USA conduct with respect to that claim can support an award of *any* punitive damages under Florida law.  In evaluating that question, unlike the question of the appropriate *amount* of punitive damages, the jury can consider only fraudulent conduct that allegedly harmed the smoker at issue – not current alleged misconduct that could not have harmed the smoker.  Florida law is clear that in the first phase of a bifurcated trial*,* any finding of liability for punitive damages must be based on the jury's assessment of the conduct that harmed the plaintiff.[4]  This is also required by federal constitutional law:  The Supreme Court has held that "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003).  Conduct "independent from the acts upon which liability was premised[] may not serve as the basis for punitive damages."

---

[3]    *See* Smoking & Health Issues, Philip Morris USA Inc., http://www.philipmorrisusa.com/en/cms/Products/Cigarettes/Health Issues/default.aspx (last visited Jan. 20, 2015).

[4]    *See, e.g.,* Final Jury Instructions, *Kerrivan v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-14157-WGY-HTS (M.D. Fla.) (Doc. 110), at 15 ("If you find for Mr. Kerrivan against a defendant and you also find that 'clear and convincing evidence' shows that **the conduct of that defendant was a substantial cause of Mr. Kerrivan's injuries and that such conduct warrants punitive damages** under the standards I have given you, then in your discretion you may determine punitive damages are warranted against that defendant.") (emphasis added); Final Jury Instructions, *Berger v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-14157-WGY-HTS (M.D. Fla.) (Doc. 94), at 39 ("Punitive damages are warranted against the defendant if you find by 'clear and convincing evidence' that, with respect to Mrs. Berger's claims for fraudulent concealment or conspiracy to fraudulently conceal: (1) the **fraudulent conduct by the defendant causing Mrs. Berger's COPD** was so gross and flagrant as to show a reckless disregard of human life or the safety of persons exposed to the effects of such conduct.") (emphasis added).

*Id.* at 422.[5]  Because the jury questions in Phase I relate only to conduct that harmed the smoker, evidence of alleged present-day conduct – including any "failure to agree" with certain propositions – is irrelevant.

Nor would Mr. Jupe's current disagreement with certain propositions in the course of discovery or a lawsuit have any relevance to the punitive amount phase (Phase II).  Among other things, "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties," *Williams*, 549 U.S. at 353, or (importantly) for conduct that did not harm the plaintiff, *State Farm*, 538 U.S. at 423.  Thus, even evidence admitted for the purpose of proving reprehensibility "must have a nexus to the specific harm suffered by the plaintiff," and the Court must "ensure that the conduct in question *replicates* the prior transgressions."  *Id*. at 422-23 (emphasis added).  In Phase II, therefore, the jury's focus must still be on the conduct that it found harmed the smoker and provided the basis for punitive liability (the fraudulent concealment of the hazards and addictiveness of smoking), and the only other evidence that is relevant to gauging the reprehensibility of *that particular conduct* is evidence of conduct that was so "similar" that it effectively "replicate[d]" the transgressions alleged to have harmed them.  *Id.* at 423.

Evidence that Mr. Jupe has declined to agree with various propositions that Plaintiff's counsel contends he should admit is far from a "replication" of the conduct alleged to have

---

[5]    *See also Cooper Indus., Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424, 435 (2001) (characterizing ratio guidepost as "the relationship between the penalty and the *harm to the victim* caused by the defendant's actions" emphasis added)); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996) (looking to "the disparity between the harm or potential harm *suffered by Dr. Gore* and his punitive damages award" in describing reasonable-relationship requirement) (emphasis added)); *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004) (reducing punitive award because certain evidence was "not relevant" to plaintiff's case, thus potentially causing the jury to punish the defendant for "being an unsavory individual or business"); *Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907, 911-12 (2d Dist. 2008) (reversing punitive award because jury considered evidence of misconduct that was contemporaneous with, but insufficiently related to, the conduct that harmed the plaintiff).

harmed the decedent.  Plaintiff contends that smokers were harmed when they relied on statements that were misleading because they failed to disclose "the health effects or addictive nature of smoking cigarettes" (the fraudulent conduct specified in the *Engle* findings, 935 So.2d at 1257 n.4).  This conduct does not and could not occur anymore:  Defendants have publicly acknowledged that smoking causes lung cancer (and a number of other diseases), and that nicotine is addictive.  Nor could a witness's disagreement with a proposition in a courtroom or deposition "replicate" the fraudulent concealment at issue in *Engle*:  concealment of information from "smokers and the public."  No "failure to admit" in this litigation context could be deemed so "similar" to the conduct alleged to have harmed the smoker as to effectively "replicate" the earlier transgressions.  For all of these reasons, Mr. Jupe's deposition testimony on whether he currently agrees with various statement or propositions should be excluded in this case.

Accordingly, the Court should sustain Defendants' objections the following portions of Plaintiff's designations:  Jupe Dep. at 33:14-33:18, 33:20-34:10, 36:6-8, 36:9-10, 38:12-22, 47:2-5, 47:8-22, 47:24-48:1, 63:9-25, 64:9-17, 65:23-67:1, 67:2-7, 67:8-13, 68:18-69:19, 69:20-70:8, 70:8-71:16, 76:20-77:20, 78:20-79:5, 79:6-80:10, 82:4-15, 85:25-86:20, 86:21-87:10, 87:11-25, 97:23-98:8, 98:18-100:3, 101:23-102:4, 108:19-108:23, 108:25-109:12, 109:14-21, 109:23-25, 110:11-17, 111:19-25, 112:2-4, 112:6-15, 113:15-17, 113:19-21, 114:21-115:2, 115:4-116:2, 116:12-13, 116:15-22, 116:25-117:6, 117:8-23, 118:3-5, 123:22-24, 124:3-124:10, 125:4-126:1, 126:3-126:21, 126:23-24, 127:1-3, 129:3-7, 129:9-10, 129:16-130:1, 131:25-133:1, 133:3-24, 134:24-135:11, 135:13-22, 145:22-146:2, 146:4-13, 146:15-21, 148:12-16, 148:18-25, 176:13-177:20, 177:22-23, 179:23-180:7, 183:3-10, 303:3-304:1, 304:22-24, 305:3-18, 338:3-16, 338:17-339:2, 415:10-22, 415:24-25, 416:2-12, 416:14-19, 416:21-417:12, 417:14-15, 422:8-17, 426:15-427:17, 429:3-8, 429:10-430:3, 439:8-439:18, 439:20-439:21, 440:17-441:20, 441:22-

442:2, 442:5-442:9, 461:18-462:16, 463:13-466:13, 466:15-466:22,  499:9-503:3.

Dated: January 26, 2015                                    Respectfully submitted,

*/s/ Timothy J. Fiorta*                                    */s/ Mark J. Heise*
Stephanie E. Parker                                        Mark J. Heise
Florida Bar No. 0688355                                    Florida Bar No.: 771090
John F. Yarber                                             E-mail: mheise@bsfllp.com
Florida Bar No. 0688932                                    BOIES, SCHILLER & FLEXNER LLP
JONES DAY                                                  100 Southeast Second Street, Suite 2800
1420 Peachtree Street, N.E., Suite 800                     Miami, Florida 33131
Atlanta, GA 30309-3053                                     Tel: 305-539-8400
Telephone: (404) 521-3939
Facsimile: (404) 581-8330                                  **Attorneys for Defendant**
separker@jonesday.com                                      **Philip Morris USA Inc.**
jyarber@jonesday.com

Timothy J. Fiorta
Florida Bar No. 0108549
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-7776
Facsimile: (216) 579-0212
tjfiorta@jonesday.com

**Attorneys for Defendant**
**R.J. Reynolds Tobacco Company**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of January, 2015, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document

to all counsel of record.

By:  <u>/s/  *Maura McGonigle*              </u>